FREDERICK H. WEEKE ET AL., APPELLANTS, V. HENRY W.
WORTMANN, ADMINISTRATOR, ET AL., APPELLEES.

FILED APRIL 13, 1909.   No. 15,639.

1. **Contracts: VALIDITY.** A comparatively slight degree of mental in-
capacity or weakness on the part of a party thereto will justify
a court of equity in setting aside a contract for which such party
has received no valuable consideration.

2. **Executors and Administrators: DISBURSEMENTS.** An administrator
who pays out money in pursuance of an order made by the
county court cannot be personally charged with the reimburse-
ment of the same, in the absence of evidence showing that the
order was obtained by fraud and that he had guilty knowledge
of the same.

APPEAL from the district court for Thayer county:
LESLIE G. HURD, JUDGE. *Reversed.*

*Joseph P. Baldwin, O. A. Torgerson, Charles H. Sloan,
Richards & Haffke* and *T. C. Marshall,* for appellants.

*R. D. Sutherland* and *J. T. McCuistion, contra.*

CALKINS, C.

The plaintiff Kathrina Weeke was first married to one
Burstadt, and by him she had two children, the defend-
ants Minnie Wortmann and Herman H. Burstadt. Bur-
stadt died, and she then married one Stockam, by whom
she had two children, the defendants Lottie Knorenschild
and Henry H. Stockam. Stockam died when the latter
child was an infant, and in about the year 1872 she mar-
ried Henry W. Weeke, by whom she had one child, the
plaintiff Frederick H. Weeke. She lived with Weeke for
about 30 years, and until he died in Thayer county on
the 6th day of January, 1902. It appears that her first
husband left Mrs. Weeke a little personal property, and
an interest in some land upon which he had paid $150 and
to which she afterwards obtained the title. It does not

appear that her second husband left her any property; but when she married Mr. Weeke she had this tract of land in Missouri which was afterwards sold for $600, and Mr. Weeke at that time had himself about $500 in money. They moved to Nebraska, where Weeke bought land and established his home. His stepchildren were raised in his family, the daughter until she was married, and the boys until they were 17 or 18 years old. Each seems to have been furnished a small amount of property with which to make a start in life. When the older Weeke died he left an estate valued at about $11,000. He owned a house and lot in the village of Deshler, in which he resided with his wife at the time of his death. The remainder of his estate was composed of personal property, principally in money, notes and securities.

After his death the plaintiffs and the defendants Wortmann, Burstadt and Stockam met at the residence of the widow and entered into the following agreement: "This agreement entered into this 11th day of January, 1902, between the heirs of Henry William Weeke, deceased, witnesseth: That the undersigned have agreed and do hereby covenant and agree with each other to settle the estate of Henry W. Weeke as follows: (1) All debts shall be paid. (2) The widow Kathrina E. Weeke shall receive all the household goods, $200 in cash, and one-third of the balance of the estate. (3) Out of the remainder of the estate Lottie Knorenschild shall receive $200, and Frederick H. Weeke shall receive $500. (4) The estate remaining after the widow shall have her portion, and the said sums have been paid Lottie Knorenschild and Frederick H. Weeke, shall be divided into five equal parts. Mrs. Minnie Wortmann shall receive one-fifth, Herman H. Burstadt shall receive one-fifth, Lottie Knorenschild shall receive one-fifth, Henry H. Stockam shall receive one-fifth, and Frederick H. Weeke shall receive one-fifth. In witness whereof we have hereunto set our hands at Deshler, Nebraska, the day and year first above written. Kathrina E. Weeke. Mrs. Minnie Wortmann. Herman

H. Burstadt.  Lottie Knorenschild.  Henry H. Stockam.
Frederick H. Weeke."

A few days later the following addendum was added to
said agreement: "Deshler, Nebraska, January 15, 1902.
We heirs all agree to give mother the old home place in
Deshler with everything that is on the place that she may
want.  Lots seven (7), eight (8) and nine (9), in block
thirteen (13) of the original town of Deshler according
to official survey and recorded plot thereof.  Kathrina E.
Weeke.  Mrs. Minnie Wortmann.  Herman H. Burstadt.
Lottie Knorenschild.  Henry H. Stockam.  Frederick H.
Weeke."

Upon a petition signed by the plaintiffs, the defendant
Henry W. Wortmann was by the county court of Thayer
county appointed administrator of the estate of Henry
W. Weeke, and, having qualified, proceeded to execute
said trust, and filed his final report in October, 1902.  On
the 18th day of November, 1902, the county court made
an order of distribution according to the terms of the
agreement above quoted, and the administrator, in pur-
suance thereof, made payment to the parties named
therein of the amounts which it was so determined each
should receive.  On the 9th day of February, 1905, plain-
tiffs filed their petition in the county court, praying that
the order allowing the administrator's final account, the
order of distribution and that discharging the administra-
tor be vacated and set aside.  This petition, after setting
out the death of the deceased, their relation to him, the
making of the foregoing agreement, and the proceedings
had in the county court, alleged that Frederick H. Weeke
was mentally weak and easily deceived, and that the de-
fendant Henry W. Wortmann, with intent to cheat and
defraud him, presented to the plaintiff the foregoing
agreement and falsely and fraudulently represented to
him that his stepbrothers and sisters were heirs of the
deceased and entitled to share in the estate, and that,
unless the plaintiff would sign said agreement, the whole
estate would be squandered and wasted in litigation, and

that, if he would sign it, he would receive $500 more than he was entitled to, and that he, relying upon the said representations, signed the said agreement without any consideration. There were similar allegations excusing his signing of the receipt to the administrator for the share of the estate which he received, and a charge of conspiracy by the defendants to cheat and defraud the plaintiff, with an allegation that the plaintiff had no knowledge of said fraud until within six months from the time of the filing of such petition. A demurrer to the petition was interposed, and, it being sustained, the case was appealed to the district court, where the said demurrer was again sustained. The case was then brought to this court, and the judgment of the district court reversed in an opinion by ALBERT, C., 77 Neb. 407. The case being remanded, an answer denying the fraud and conspiracy was filed and the evidence heard upon issue so formed. The district court found for the defendants, and from a judgment rendered upon this finding the plaintiffs again appeal.

1. It is now confessed on behalf of the defendants that none of them had any interest in the estate of Henry W. Weeke, but it is argued that the parties were one family, living together, and by their joint labor accumulating this estate; that they are Germans, a people with whom the idea of community in the family property is strong; and that the plaintiff Frederick H. Weeke, realizing the justness of an equal division of the property, was, in the execution of this agreement, doing what equity and good conscience prompted him to do. To the suggestion that there was no consideration, it is argued that, where the transaction is one which tends to the peace and security of the family, the motive of avoiding family disputes and litigation is a sufficient consideration. Either of these arguments would have weight if Frederick H. Weeke were the equal in mental ability of his brothers and sisters with whom he was dealing. If we could say that Frederick H. Weeke understood that in signing this agreement he was

making to his half brothers and sisters a gift of four-fifths of his inheritance, and was doing this knowingly and intelligently, we think the agreement might be sustained. According to the testimony of the plaintiff's witnesses, the inducement for him to enter into this agreement was fear that his half brothers and sisters would make claims against the estate which would so diminish the same that he would receive less than under the agreement; while according to the defendants' testimony the proposition to make an equal division came from Frederick, but it was made as it might have been made had he supposed their rights were equal to his own, and without any act or word that would indicate that he knew or realized that he was making them a most generous and liberal gift.

We are impressed with the conviction that none of the parties realized the extent to which Frederick H. Weeke was surrendering his clear legal rights, but we think they were all ignorant of the law and mistaken as to their respective legal rights. Whatever may be the effect of a mistake of law pure and simple, there is no doubt that equitable relief will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud. It is enough that the misconception of the law was the result of or even aided or accompanied by incorrect or misleading statements of the other party. 2 Pomeroy, Equity Jurisprudence (3d ed.), sec. 847. And this leads us to a consideration of the question whether the evidence in the record is such that the district court should have found the allegations as to the mental weakness of the plaintiff Frederick H. Weeke to be true. A number of witnesses were produced who were acquainted with him, and their testimony tended to

show that he was somewhat weak minded and easily persuaded. Opposed to this was the testimony of other witnesses who were so situated that they should have known of this weakness, if it existed, and who testified that they had never heard his mental capacity questioned. So far the testimony is so evenly balanced that we would not feel justified in reviewing the decision of the district court if it were not that his conduct as testified to by both plaintiffs' and defendants' witnesses indicates a degree of stupidity and want of mental understanding that places him below the level of ordinary men. In such a case the mental weakness of the party seeking to avoid a contract unfavorable to him has the same effect as incorrect or misleading statements or acts by the party claiming under such contract. It is undoubtedly difficult to formulate any rule for determining the degree of mental weakness which will justify a court of equity in interfering and setting aside a contract, but it is certain that, where the consideration is inadequate, or, as in this case, where there is no consideration whatever, the degree of mental weakness required is much less than when the contract is made upon a fair consideration and is reasonable and just.

2. It does not follow from the foregoing consideration that the plaintiff is entitled to all the relief which he demands. The judgment of the county court ordering the distribution was based upon this agreement, and that should be set aside, and the parties receiving a share of said estate solely by virtue of said agreement should be required to return the same, with interest from the time of commencement of this proceeding.

The administrator paid out this money in pursuance of an order made by the county court, and he cannot be personally charged with the payment of the same, in the absence of evidence showing guilty knowledge of the fraud on his part. This we think the record fails to disclose, and upon that question the finding of the district court must stand. The plaintiff must be left to his recourse

against each individual receiving a share of the estate under said agreement.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with this opinion.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.