IN RE ESTATE OF ALFRED ANDERSON, DECEASED. MYRTH ANDERSON ET AL., APPELLANTS AND CROSS-APPELLEES, v. WILLIAM H. LAMME, ADMINISTRATOR OF THE ESTATE OF ALFRED ANDERSON, DECEASED, APPELLEE AND CROSS-APPELLANT.

118 N. W. 2d 339

Filed November 30, 1962. No. 35267.

William G. Line and Theodore W. Vrana, for appellants.

A. C. Sidner and Charles H. Yost, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

Alfred Anderson died intestate on May 6, 1959. He was survived by his widow, Myrth Anderson; a daughter, Gloria Youngquist; and a son, Donald N. Anderson. During his lifetime the deceased operated a cafe at

Fremont, Nebraska, known as Al's Restaurant. In addition to the cafe the deceased owned a 1956 Oldsmobile automobile and had approximately $2,700 in cash at the time of his death. This was the property which was available to pay debts of over $12,000 and the expenses of administration.

On May 7, 1959, William H. Lamme, a member of the firm of Spear, Lamme & Simmons, was appointed special administrator of the estate upon the petition of the widow. On June 1, 1959, he was appointed administrator of the estate.

The cafe was sold on November 30, 1960. In August 1961, the heirs of the deceased filed an application in the county court to set aside the sale of the cafe, remove the administrator, and require him to account. The administrator filed an answer to the application of the heirs and also a final report and petition for discharge. The heirs filed objections to the report. The county court set the petition for hearing and ordered that notice of hearing be given, which was given as required by law.

The county court denied the application to remove the administrator, overruled the objections to the report of the administrator, and approved the report, including an allowance of $9,000 to the administrator for his services as attorney and administrator. The heirs then appealed to the district court from both orders.

At the trial in the district court the appeal from the order denying the application to remove the administrator was abandoned. The district court approved the report of the administrator except as to an item of $1,008 for attorney's fees to Spear, Lamme & Simmons for services concerning a claim for damages resulting from a fire that occurred in 1958. Both parties filed motions for rehearing which were overruled. The heirs then appealed to this court and the administrator cross-appealed.

The assignments of error all relate to the disposition of the proceeds of the claim for the fire loss, the sale

of the cafe, and the fee allowed the administrator for his services as attorney and administrator. In disposing of these matters we will discuss them separately.

On May 30, 1958, the cafe was damaged by fire. A part of the loss was covered by insurance. The insurance carriers paid $2,887.50 to the deceased and took subrogation agreements from him.

The insurance carriers and the deceased then presented claims against third parties who were alleged to have negligently caused the fire. Both the insurance carriers and the deceased were represented by Spear, Lamme & Simmons. The deceased died while the claims were pending. The administrator succeeded to the interest of the deceased and the services of the attorneys who had represented the deceased in his lifetime were continued. More than 6 months later a settlement of the claims was negotiated.

The administrator then filed an application in the county court requesting authority to complete the settlement. The application alleged that a total sum of $6,247.14 had been agreed upon and that of this amount $2,887.50 was due the insurance carriers by reason of their rights of subrogation. The county court entered an order approving the settlement and directed that the proceeds of the settlement be paid to the estate and the insurance carriers in the amounts alleged in the application. The proceeds of the settlement were distributed in accordance with the order of the county court except that Spear, Lamme & Simmons deducted 30 percent ($1,007.82) from the amount due the estate as attorney's fees and paid the net amount ($2,351.82) to the administrator.

The heirs contend, first, that the administrator is liable for the $2,887.50 paid to the insurance carriers. This payment was made pursuant to an order of the county court, and the order of the county court is a complete defense so far as any personal liability of the

administrator is concerned. Weeke v. Wortmann, 84 Neb. 217, 120 N. W. 933.

The contention of the heirs is based upon a theory that the insurance carriers were required to file claims in the estate proceedings before they could obtain their share of the proceeds of the settlement of the claim. The deceased was not indebted to the insurance carriers as a result of the payments made to him during his lifetime by the insurance carriers. By reason of their payment of a part of his loss, the insurance carriers were subrogated to the rights of the deceased against the third parties whose negligence caused the fire. Although the insurance carriers had a right to proceed against the third parties in the name of the deceased or his administrator, neither the deceased nor the administrator had any beneficial interest in the part of the recovery that was due the insurance carriers. As to that part of the recovery the administrator was a trustee for the benefit of the insurance carriers. There is no merit in the contention of the heirs with respect to the $2,887.50 paid to the insurance carriers.

The heirs next contend that the administrator is liable for the $1,007.82 deducted as attorney's fees by his firm from the share of the proceeds of the settlement due the estate. This is the item in the report of the administrator which the district court did not approve.

The heirs contend that the fee arises from a contract made by deceased during his lifetime and that the failure of the administrator or his firm to file a claim in the proceedings defeats any right to compensation for their services. There is a further contention that the administrator was barred from testifying about the transaction by reason of section 25-1202, R. R. S. 1943. At most, this contention of the heirs would be applicable only to services performed before the death of the deceased. Services performed by or for the administrator after the death of the deceased would be an expense of administration and not indebtedness of the deceased.

An attorney at law has a general or retaining lien for the balance of compensation due him upon money in his hands belonging to his client. § 7-108, R. R. S. 1943. The lien extends to the whole indebtedness covering the general balance due. To the extent of the lien the attorney is the owner and cannot be called upon to pay over that part of the money in his hands. Van Etten v. State, 24 Neb. 734, 40 N. W. 289, 1 L. R. A. 669. The right of lien is not affected by the fact that the client is a personal representative and that the services were rendered and the money received on behalf of an estate. Burleigh v. Palmer, 74 Neb. 122, 103 N. W. 1068. A secured creditor may rely upon his security and is not required to file a claim in the estate proceedings. Crawford State Bank v. McEwen, 132 Neb. 399, 272 N. W. 226. The deduction by Spear, Lamme & Simmons of 30 percent of the amount due the estate from the proceeds of the settlement and the payment of the balance to the administrator were, in effect, an assertion of a lien and a satisfaction of the amount due by a retention of the money.

There is no dispute about the reasonableness of the fee. The heirs concede that the amount of the fee is reasonable for the services performed. There being no issue over the reasonableness of the amount of the fee, that item of the report should have been approved.

On September 29, 1960, the cafe was listed for sale with the Fremont State Company. The sale of the cafe and the listing of it with the Fremont State Company was authorized by the county court. The listing agreement was signed by the administrator and all of the heirs and provided for an "asking price" of $40,000.

The sale of the cafe was actually handled by Lloyd C. Blair, an officer of the Fremont State Company. Blair obtained two offers to purchase which were submitted to the heirs. Harold Krumel offered to purchase the cafe for $30,000. Several days later Dayton Camp offered to purchase the cafe for $33,000. Both of these offers were

rejected by the heirs. Shortly after the Camp offer had been rejected, Krumel submitted a written offer to purchase the cafe for $33,500. This offer was accepted in writing by the administrator and all of the heirs on October 28, 1960. The controversy arises out of the fact that the heirs did not know that Blair had agreed to and did assist Krumel in financing the purchase of the cafe. Blair made a full disclosure of his interest in the transaction to the administrator, but the administrator did not advise the heirs that Blair had a personal interest in the transaction.

The personal representative of an estate is a fiduciary in his relation to the beneficiaries of the estate of the deceased. As such he is required to make a full disclosure of all facts within his knowledge which are material for the beneficiaries of the estate to know to protect their interest. Johnson v. Richards, 155 Neb. 552, 52 N. W. 2d 737.

It is unfortunate that the administrator failed to advise the heirs that Blair had an interest in the offers to purchase which had been submitted by Krumel. But, before the administrator can be held liable to the heirs, they must show that they were damaged. The theory of the heirs is that the cafe could have been sold for $40,000 and would have been sold for that amount if they had known about Blair's interest in the transaction.

The evidence is that when the deceased died, the cafe equipment had a depreciated value of $8,400. During the course of administration, $7,000 in new equipment was purchased. At the time of the sale the depreciated value of the cafe equipment was $10,600. The lease had a remaining term of 2 years and 10 months. There was a controversy with the lessor as to whether the lease had terminated when the deceased died, and there was difficulty in securing the consent of the lessor to an assignment of the lease. In June 1960, Blair and an experienced restaurant operator had appraised the cafe and had advised the administrator that

in their opinion the cafe could be sold at that time for between $20,000 and $25,000. Although the cafe did a large volume of business, it produced a comparatively small net return.

There was evidence that at one time Camp had told Blair that if Camp could get the backing, he would pay the full asking price of $40,000. However, when Camp finally did get backing and made an offer to purchase, it was for $33,000. When Blair notified Camp that his offer had been rejected, Blair further advised Camp that he would have to increase his offer if he wanted to buy the cafe. Camp's reply was that he had no further backing, and that he would "see what happens," and talk about it later. Blair testified that he checked and found that Camp could not obtain the lease. There was also evidence to the effect that Blair did not contact another possible prospective purchaser after the $33,500 offer had been received. Although the heirs knew about Blair's interest soon after the cafe had been sold, there is no evidence that they took any action as against the purchasers to attempt to rescind the sale.

The evidence, when considered as a whole, establishes that the cafe sold for a fair price. In fact, if Blair had not offered to assist Krumel, it is doubtful whether the cafe could have been sold to another purchaser at the price offered by Krumel. We conclude that the evidence fails to establish that the heirs were damaged by the failure of the administrator to advise them that Blair had an interest in the offers to purchase submitted by Krumel.

The report of the administrator listed as a disbursement an item of $9,000 to William H. Lamme for administrator's and attorney's fees. This item of the report was approved over the objections of the heirs by both the county court and the district court.

The amount which may be allowed to an administrator as compensation for his services is regulated in the first instance by statute. Section 30-1412, R. R. S. 1943, pro-

vides that an administrator "shall be allowed commissions upon the amount of personal estate collected and accounted for by him * * * as follows: For the first thousand dollars at the rate of five per cent; for all above that sum and not exceeding five thousand dollars, at the rate of two and one-half per cent; and for all above five thousand dollars at the rate of two per cent. * * * In all cases such further allowances may be made as the county judge shall deem just and reasonable for any extraordinary services not required of an executor or administrator in the common course of his duty."

The heirs contend that the administrator has made no claim for compensation for extraordinary services and is now estopped from making such a claim; and that the administrator has claimed that his fees should be computed by applying the statutory schedule to the gross receipts, including the gross receipts from the operation of the cafe. Although there is some evidence which tends to support this theory, we do not think that it is a correct interpretation of the record. Apparently there is some confusion on the part of both the administrator and the heirs as to the meaning of the term "extraordinary services" as used in section 30-1412, R. R. S. 1943.

The administrator has claimed a fee of $9,000 for all of his services. As we view the record, the question to be determined is whether that is the reasonable value of the services to the estate in this case.

The administrator in this case was a lawyer and performed all of the legal services for the estate. Such services are extraordinary within the meaning of the statute. Where an administrator performs legal services which are necessary and beneficial to the estate, the court may make an additional allowance as reasonable compensation for such services. In re Estate of Wilson, 83 Neb. 252, 119 N. W. 522. The heirs admit that if the administrator is entitled to any compensation, he is entitled to reasonable compensation for the legal serv-

ices which were furnished to the estate in this case. In their brief the heirs suggest $1,201 as a proper allowance for such services.

The heirs contend that the allowance to the administrator for his services to the estate other than legal services should be computed by applying the statutory schedule to the amount by which the receipts exceeded the disbursements. By their computation this would result in an allowance of $1,072.38 or a total of $2,273.38.

The administrator in this case was appointed as special administrator on the day after the deceased died. He immediately took charge of the cafe and supervised its operation from May 7, 1959, until December 1, 1960, when it was sold. Donald N. Anderson, one of the heirs, was employed as manager of the cafe at a salary of $100 per week. His wife was also employed at a salary of $75 per week.

During the period of approximately 19 months in which the administrator was responsible for the operation of the cafe, he took charge of the receipts, which were in excess of $400,000, and paid all of the bills. There was an average of 45 employees at the cafe and a high rate of turnover in personnel. In one year it was necessary to prepare 129 W-2 forms. Donald N. Anderson was in the office of the administrator almost daily and, frequently, he and the administrator would confer about problems at the cafe. There were matters with the lessor which required the services of the administrator. There was trouble with the heating and cooling systems, with the plumbing, and with the cafe equipment. There was no accounting system for the cafe and no provision for protecting supplies from pilferage. One supplier had a claim for an account of more than $7,000 which extended back over a year and a half which required analysis and investigation. The cafe operated under licenses, including a beer license, which required the attention of the administrator. The administrator prepared all of the reports and returns re-

quired by the Internal Revenue Service and other governmental agencies. In summary, the operation of the cafe required a part of the time of the administrator almost every day during the 19-month period of his supervision.

The continuance of the operation of the business of a decedent is not a service required of an administrator in the common course of his duty. It is in the nature of an extraordinary service for which an additional allowance may be made under the statute. In re Estate of Wilson, *supra*. See, also, Annotation, 66 A. L. R. 515. The compensation allowed an administrator for such services should be the reasonable value of the time and effort expended.

The administrator produced three lawyers who testified as expert witnesses as to their opinion of the value of the services of the administrator to the estate. Their testimony placed the value of all services at between $9,000 and $13,500 and the value of the legal services considered separately at between $1,150 and $2,000. The heirs presented no expert testimony and claimed that such evidence was inadmissible.

In arriving at our conclusion as to what was the reasonable value of the services of the administrator in this case we have considered the entire record, including the findings of the county court and district court. We have given consideration to the fact that it was necessary to sell the cafe before the claims could be paid and the estate closed; that the cafe had more value if sold as a going business; and that the report of the appraisers in June 1960 recommended that the cafe be operated for a year. We have also given consideration to the fact that the operation of the cafe enabled the administrator to pay a widow's allowance of $4,800 during the first year; that the heirs have received approximately $21,500 cash in advance distribution; and that there is a remaining balance of approximately $3,500 in cash for distribution to them. We conclude that $9,000

is a fair and reasonable allowance to the administrator for his services to the estate in this case.

The judgment of the district court is affirmed except as to the finding and judgment that the account of the administrator should be surcharged in the amount of $1,008. As to that finding and part of the judgment, the judgment is reversed and the cause remanded with directions to enter a judgment in conformity to this opinion and to certify it to the county court.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.