Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/11/2021 09:10 AM CDT

- 809 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

In re Estate of Orville W.
Filsinger, deceased.
Marvin O. Filsinger et al., appellants and
cross-appellees, v. Robert Rauner, Jr., Personal
Representative of the Estate of Orville W.
Filsinger, deceased, appellee
and cross-appellant.

___ N.W.2d ___

Filed May 4, 2021.    No. A-20-347.

1. **Appeal and Error.** An appellate court does not consider an argument or legal theory raised for the first time on appeal.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. ____: ____. In reviewing a lower court's grant of summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.
4. **Limitations of Actions: Appeal and Error.** Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court.
5. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
6. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

- 810 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

7. **Decedents' Estates.** As a fiduciary, the personal representative is required to make a full disclosure of all facts within his knowledge that are material for the beneficiaries to know so that they can protect their interest.

8. **Decedents' Estates: Wills.** The personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and the Nebraska Probate Code as expeditiously and efficiently as is consistent with the best interests of the estate.

9. **Decedents' Estates: Damages: Liability.** If the personal representative of an estate exercises his or her power improperly and damages the estate or causes a loss as a result of the breach of fiduciary duty, then the personal representative is liable to interested persons in the estate.

10. **Decedents' Estates.** A devisee or claimant may proceed against a personal representative for breach of fiduciary duty under Neb. Rev. Stat. § 30-24,119 (Reissue 2016).

11. **Decedents' Estates: Limitations of Actions.** Under the plain language of Neb. Rev. Stat. § 30-24,119 (Reissue 2016), the claimant must bring the action for breach of fiduciary duty within 6 months of the closing statement's being filed.

12. ____: ____. The statutory time bar found within Neb. Rev. Stat. § 30-24,119 (Reissue 2016) does not apply if the plaintiff is seeking to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

13. **Decedents' Estates: Appeal and Error.** In interpreting the various sections of the Nebraska Probate Code, an appellate court may examine the comments to the Uniform Probate Code.

14. **Decedents' Estates.** A closing statement is an affirmation by the personal representative that he or she believes the affairs of the estate to be completed.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

16. **Decedents' Estates: Fraud: Limitations of Actions.** Neb. Rev. Stat. § 30-2206 (Reissue 2016) requires that an action in a probate case based on fraud must be commenced within 2 years following the discovery of the fraud.

17. **Decedents' Estates: Notice.** If a personal representative files a petition for an order of complete settlement, he or she is required to give all interested persons notice, consistent with Neb. Rev. Stat. § 30-2220 (Reissue 2016), the general notice provision of the probate code.

- 811 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

18. **Trial: Evidence.** Where reasonable minds could draw different conclusions from the facts presented, a triable issue of material fact arises.

19. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

20. **Jurisdiction: Final Orders: Time: Appeal and Error.** An appellate court has jurisdiction over final orders that are appealed within 30 days from their entry.

21. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020), an appellate court may review an order that affects a substantial right made during a special proceeding.

22. **Decedents' Estates: Final Orders.** Proceedings under the Nebraska Probate Code are special proceedings under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020).

23. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

24. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) include those legal rights that a party is entitled to enforce or defend.

25. **Final Orders: Appeal and Error.** If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case.

26. **Decedents' Estates: Final Orders: Claims: Fees.** Fee orders in a probate case are made in a special proceeding; an order awarding a personal representative fees affects a substantial right when it finally determines the personal representative's claim for reasonable compensation under Neb. Rev. Stat. § 30-2480 (Reissue 2016).

Appeal from the County Court for Cheyenne County: Russell W. Harford, Judge. Affirmed in part, and in part dismissed.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellants.

Torrey J. Gerdes, J. Michael Hannon, and Randall L. Goyette, of Baylor Evnen, L.L.P., and R. Kevin O'Donnell, of Law Office of R. Kevin O'Donnell, P.C., L.L.O, for appellees.

Pirtle, Chief Judge, and Riedmann and Arterburn, Judges.

- 812 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

Arterburn, Judge.

## INTRODUCTION

Marvin O. Filsinger, Javonne Krueger, and Gloria Vegas (the Claimants) appeal the order of the county court for Cheyenne County, Nebraska, which granted summary judgment in favor of Robert Rauner, Jr., the personal representative of the estate of Orville W. Filsinger (the Personal Representative). The order dismissed the claim filed by the Claimants against the Personal Representative which challenged the amount distributed to Orville's wife, Berniece Filsinger. The Personal Representative cross-appeals a separate order from the county court which denied his claim for attorney fees and his renewed application for attorney fees related to prior litigation. For the reasons set forth herein, we affirm the order of the county court granting summary judgment to the Personal Representative. We dismiss the cross-appeal for lack of jurisdiction.

## BACKGROUND

Orville died in September 2009 in Cheyenne County. Pursuant to a provision found in the will signed by Orville in December 2002, Rauner was nominated by both Marvin and Berniece to be the Personal Representative. He accepted the appointment. Orville's will stated, as is relevant to this appeal, that upon his death, Berniece would receive the personal residence where they resided; Orville's personal effects, jewelry, and tools; and a further sum of $1 million reduced by probate or nonprobate transfers of real and personal property. The will goes on to state:

> It is my intent that in the event the total value of the real estate and personal property owned in joint tenancy with or payable on death to Berniece . . . or in which Berniece . . . is a beneficiary, equals or exceeds One Million Dollars ($1,000,000.00), that the said Berniece . . . not receive any additional sums pursuant to this my Last Will and Testament.

- 813 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

A postnuptial agreement signed by Orville and Berniece in October 2002 mirrored the language of Orville's will, stating that Berniece would receive the personal residence of the parties and the furniture, fixtures, and appliances in the property, as well as Orville's personal effects, jewelry, and tools upon Orville's death. The postnuptial agreement further mirrored his will by also stating that Berniece would receive the further sum of $1 million reduced by nonprobate transfers of real estate and personal property. Orville signed a codicil to his will in April 2006; however, the codicil did not change the portions of the will which are relevant to this appeal.

On August 10, 2010, the Personal Representative filed the initial inventory of property owned by Orville at the time of his death. This inventory disclosed that there was real and personal property owned in joint tenancy with Berniece in the approximate amount of $1.8 million. The inventory also disclosed that Berniece would receive a parcel of real property, commonly referred to as the "Sunol Property."

The Claimants are Orville's children. Pursuant to the terms of Orville's will, they would receive the remainder of the estate. After the Personal Representative's appointment, he communicated with the Claimants via letter explaining that the Sunol Property would be a part of the estate. However, the Personal Representative explained that Berniece would disclaim her rights to this property but, in so doing, wished to receive an assignment of the rights to a promissory note for a loan that was given to a debtor known as the Andersons in the amount of $25,000. The Personal Representative determined that this was a reasonable request, in light of the value of the Sunol Property, which was estimated to be $600,000. By virtue of Berniece's disclaimer, the Sunol Property would be devised to the Claimants. Subsequent to this letter, a "Disclaimer and Renunciation Pursuant to Agreement" executed by Berniece, wherein she renounced all rights to the Sunol Property, was filed on October 8, 2010.

- 814 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

After the filing of the disclaimer and renunciation, an amended inventory was filed by the Personal Representative on November 16, 2010, listing the nonprobate property Orville had owned in joint tenancy with Berniece and valuing that property at approximately $1.2 million. A second amended inventory was later filed on December 7 showing that the value of the nonprobate property Orville owned in joint tenancy with Berniece was also approximately $1.2 million.

In July 2012, two of the Claimants, Krueger and Vegas (then known as Gloria Haines), sent an electronic communication to the Personal Representative and his counsel stating their concern regarding Orville's estate and the distribution of assets. In that communication, they asserted that their interpretation of the postnuptial agreement and of Orville's will was that the distributions to Berniece were limited to a total value of $1 million. They also stated that based on the accounting submitted to the county court at that time, the value of Berniece's distributions were $1,186,686. They contended that after adding the life insurance policy and the loan made to the Andersons, the total amount that Berniece would receive would be $1,314,352. A response was sent to Krueger and Vegas by Steven Matoon, then counsel for the Personal Representative. Matoon expressed his opinion that the will and postnuptial agreement did not place a $1 million maximum on the amount Berniece could receive in total from all assets when nonprobate transfers were considered. He also noted that Berniece had renounced her claim to the Sunol Property in which she had a joint tenancy interest, an action she was not required to take. He noted that the Sunol Property was worth $587,000 and would now be divided between the Claimants. Following this exchange, our record reveals no further protest of the amount received by Berniece until 2015.

In January 2014, the Personal Representative prepared a formal petition for complete settlement after the informal testate proceeding (the Formal Petition), which was file stamped by the county court on January 10, 2014. In the Formal

- 815 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

Petition, the Personal Representative affirmed the following: He collected and managed the assets for the estate; he filed a first inventory, second amended inventory, and final report; he paid all lawful claims against the estate; he distributed assets and proposed distribution of further assets as designated in the schedule of distribution that was attached to the Formal Petition; and there were no contingent, unliquidated, or future claims against the estate. He also stated that the Nebraska inheritance tax had been paid in full. He disclosed an additional asset, not previously inventoried, which was a promissory note of $60,000 payable to Orville's estate. He disclosed that Berniece would receive, by virtue of joint tenancy ownership and transfer and assignment of the promissory note of the Andersons, at least $1 million. He asked the court to approve the distributions made in the final report and in the schedule of distribution. He also asked for the court to discharge him as the personal representative.

That same day, January 10, 2014, the Personal Representative also submitted a final report. In the final report, the Personal Representative affirmed that he had received all income, payments, and receipts in Orville's estate and paid all costs, expenses, and disbursements. An accounting of the estate account from October 22, 2010, through January 2, 2014, was included with this final report. A schedule of distribution, also file stamped on January 10, was prepared. The schedule of distribution listed distributions to the Claimants and listed one distribution to Berniece. This distribution was the loan to the Andersons valued at approximately $25,000. On January 10, the county court set February 13 as the date for a hearing on the Formal Petition.

The Personal Representative filed an affidavit of mailing notice of complete settlement on January 17, 2014. This affidavit stated that the Personal Representative's attorney sent to the Claimants by U.S. mail a copy of the notice required for the February 13 hearing and copies of the Formal Petition, the schedule of distribution, and the final report. Additionally,

- 816 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

the Personal Representative's attorney filed an affidavit stating that he mailed a notice of hearing of the complete settlement after the informal testate proceeding in Orville's estate to all interested parties on or about January 16. He also stated in his affidavit that he did not receive these mailings as returned mail. The Sidney Sun Telegraph, a legal newspaper in Cheyenne County, published notice for the hearing on January 15, 22, and 29.

The county court entered the formal order for complete settlement after the informal testate proceeding (the Formal Order) on February 13, 2014. In the Formal Order, the court noted that it considered the Formal Petition. The court found that the Personal Representative collected and managed the assets of the estate, filed an inventory and final accounting, paid all lawful claims against the estate, and performed all other acts required. The court stated that Berniece would receive a total of 28.61 percent of the probate and nonprobate assets of Orville's estate. It specifically noted that Berniece would receive at least $1 million from the estate. The court further found that Orville's will and codicil were declared to be valid and formally probated. The court allowed and approved the final accounting and the distributions made and reported on the final accounting and the schedule of distribution. The court also determined that the authority of the Personal Representative should be terminated and that he would be discharged from further claims when the final fiduciary income tax return was filed with the Internal Revenue Service. This was the last action taken in the estate until almost 3 years later, in December 2016.

In the interim, Berniece passed away in 2015. On September 25, the Claimants filed a claim in Berniece's estate, alleging that she received an excessive distribution from Orville's estate. The Claimants alleged that the distribution was in violation of the postnuptial agreement entered into between Orville and Berniece during their lifetimes. As part of this claim, the Claimants deposed the Personal Representative in

- 817 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

July 2016. Ultimately, the county court determined that the allegation of an improper distribution was filed in the wrong estate and that the claim should have instead been brought in Orville's estate. The county court stated that "[a]lthough the Claimants have filed their claim in this case, it is actually a claim that should be asserted in the Estate of Orville Filsinger, PR 09-48, because the claim asserts an improper distribution in that estate. Berniece . . . was simply the benefactor of the alleged improper distribution." The Claimants appealed the county court's decision to this court, alleging the lower court erred in determining that the claim must be filed in Orville's estate and in not finding that fraud was perpetrated on the Claimants. We affirmed the county court's decision. See *In re Estate of Filsinger*, 27 Neb. App. 142, 927 N.W.2d 391 (2019) (*Filsinger I*).

In our opinion, we first determined that if the claim was alleging there was a breach of contract by virtue of Orville's will's not conforming to the postnuptial agreement, the claim would be against Orville's estate, and thus the county court was correct in holding that the Claimants could not assert the claim against the estate of Berniece. If, however, the claim was that the distribution to Berniece failed to conform with Orville's will, the limitations of Neb. Rev. Stat. § 30-24,120 (Reissue 2016) would apply. *Filsinger I.* After we reviewed the Formal Petition and the Formal Order in Orville's estate, we held that the petition and order in Orville's estate were a proceeding settling the accounts of a personal representative which would bar the claim from the Claimants under § 30-24,120. *Filsinger I.* We found that there was no question that the court entered a final order for complete settlement in connection with that distribution. *Id.* We also determined that the claim was previously adjudicated under the Formal Order because the Personal Representative requested the court to approve the final settlement and direct that the distribution of remaining assets of the estate be made to the distributees in the amount and manner set forth in the attached schedule of

- 818 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

distribution. *Id.* Under that order, Berniece, by virtue of joint tenancy ownership and transfer and assignment of the promissory note of the Andersons, would receive at least $1 million as directed. *Id.* In the Formal Order, the county court found and determined that the Personal Representative of Orville's estate was authorized and directed to distribute assets to the distributees in the amount and manner set forth in the schedule of distribution. *Id.* We held that because that specific issue was adjudicated in connection with the Personal Representative's petition for formal settlement, the Claimants' direct claim against the distributee of Orville's estate is barred by the terms of § 30-24,120. *Filsinger I.* Finally, we found that the Claimants' arguments that the fraud provisions of § 30-24,120 applied were not borne out by the language of the claim filed in Berniece's estate. *Filsinger I.* Since the pleading did not suggest fraud in the manner in which the distributions were made, the county court did not err in failing to find that the action was based on fraud. *Id.*

The Claimants filed the present claim against the Personal Representative of Orville's estate on May 24, 2017. The Claimants alleged that the Personal Representative breached his fiduciary duty to the estate and the beneficiaries of the estate by not disclosing the details of the estate distribution. Other details of distribution were alleged to have been fraudulently concealed. The Claimants alleged that they received neither a notice of the hearing held on February 13, 2014, nor the schedule of distribution. They also alleged that the Personal Representative knew that the Claimants did not have specific or detailed knowledge of the schedule of distribution because no accounting, no final report, and no information had been given to them. They further alleged that the Personal Representative disclosed some information but did not disclose all the information, informing the Claimants about only a $25,000 note with respect to Berniece's distributions. The Claimants also alleged that the Personal Representative had a fiduciary duty to speak to the Claimants but deliberately

- 819 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

remained silent, which they allege to be equivalent to a false representation. The Claimants asserted that they were damaged in that they reasonably relied on the Personal Representative's assurances that proper distribution under the postnuptial agreement was occurring.

The Claimants further asserted that the Formal Petition, the final accounting, and the schedule of distribution were not found within the case file for Orville's estate. In a proceeding in Berniece's estate that occurred on January 28, 2016, it was discovered that these documents could not be properly located within the court file. However, in that hearing, the clerk reported that the documents did appear on the online electronic court filing system. During the hearing for summary judgment, the Claimants argued that the Formal Petition, the final accounting, and the schedule of distribution were never in the court file. However, the Claimants did not argue that the Formal Order was not in the court file. They did allege that they did not receive these documents until the deposition of the Personal Representative.

At the hearing, Marvin, one of the Claimants, asserted that he never received notice of the hearing or any of the information that the Personal Representative stated that he mailed to Marvin. A transcript of his earlier testimony adduced in a hearing on the claim made in Berniece's estate was received wherein Marvin testified that he does not subscribe to the Sidney Sun Telegraph, the newspaper that published the notice for the hearings. However, he verified his address, which was the same as the one included by the Personal Representative in the affidavit of mailing notice. Marvin's address was also correctly listed on the application for informal probate.

Finally, the Claimants alleged that no final accounting was filed and that the last inventory that was filed was completed in 2010. The Claimants then alleged that the Formal Order on complete settlement filed by the court did not disclose the irregularities that the Claimants previously asserted. They also claimed that the Formal Order made findings inconsistent

- 820 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

with what was in the online electronic court file. They asserted that the initial basis for their concerns was a postnuptial agreement that stated that Berniece would receive $1 million. They also stated that Berniece confirmed this agreement by executing a disclaimer and renunciation. The Claimants then stated that Berniece acquired, took, claimed, and held onto property that exceeded $1 million by $200,000.

The court stayed all proceedings in Orville's estate while the claim in Berniece's estate was being decided on appeal. After we issued our mandate in *Filsinger I*, proceedings in the present case resumed.

The Personal Representative denied the claim that the Claimants made against him. The Personal Representative stated that the claim was filed only after the county court issued an order in Berniece's estate holding that the claim of excessive distribution was filed in the wrong estate. The Personal Representative then asserted that the claim was time barred under the following statutes: Neb. Rev. Stat. §§ 30-2485 and 30-24,119 (Reissue 2016). On December 4, 2019, the Personal Representative filed an amended motion for summary judgment. The Personal Representative requested the court to grant summary judgment in his favor and deny all claims filed by the Claimants.

On April 28, 2020, the county court entered its order granting the Personal Representative's motion for summary judgment. The court determined that any claim by the Claimants failed. First, the court denied the claim pursuant to § 30-24,120 because the claim was not timely filed and had been previously adjudicated at the time of the closing of the estate on February 13, 2014. The court determined that there was no evidence to support the allegations of fraud or fraudulent concealment that would toll the time for filing the claim. The court also denied the claim pursuant to § 30-24,119 because it was not timely filed. The court, again, determined that the claim was barred because it had been adjudicated at the hearing on February 13, 2014, which had closed the estate. The court further

- 821 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

determined that there was no evidence of fraud, misrepresentation, or inadequate disclosure that would toll the time for filing a claim under that statute. The court also determined that the claim would be barred under § 30-2485 because it was not timely filed. The court granted the motion for summary judgment and dismissed the Claimants' claim against the Personal Representative. The Claimants appeal from that order.

On cross-appeal, the Personal Representative contends that the county court erred by refusing to approve his application to pay attorney fees with respect to fees incurred relative to the claims made against Berniece's estate. The Personal Representative filed an application to pay fees and costs on December 21, 2016, for work completed through October 31. On May 16, 2017, the court denied the application because the Formal Order for complete settlement after the informal testate proceedings was filed on February 13, 2014, and no further filings were made until the application for fees and response in opposition were filed at the end of 2016. The court further found that the estate was closed and that the deposition of the Personal Representative was sought in a separate case. On July 14, 2017, the Personal Representative filed a renewed application to pay fees and costs for work done through June 30, defending his actions in Orville's estate, including for the work for the deposition in proceedings involved in Berniece's estate and other costs that were previously denied. The court held a hearing on July 21 regarding the motion for leave to file additional evidence on the issue of attorney fees and costs. The court denied this motion on July 26, explaining that because the Personal Representative was released from his duties of personal representative 1 year after the Formal Order of settlement was entered and no further claims were made in the estate during that time, no further attorney fees were warranted. The Personal Representative appeals these decisions.

## ASSIGNMENTS OF ERROR

[1] The Claimants assign that the county court erred by granting the Personal Representative's motion for summary

- 822 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

judgment as a matter of law. The Claimants specifically allege the county court erred by (1) finding that their claim was barred under §§ 30-2485 and 30-24,119; (2) failing to find that the Personal Representative violated Neb. Rev. Stat. § 30-2464 (Reissue 2016); (3) failing to find that the Personal Representative violated Neb. Rev. Stat. § 30-2473 (Reissue 2016); and (4) failing to find that the Personal Representative committed inadequate disclosure, fraud, or misrepresentation in his administration of Orville's estate. We note that although the Claimants allege that the county court erred by finding their claim was barred under § 30-2485, they concede in their brief that they have never asserted or claimed that their claim was pursued under that statute, so we need not address this assignment of error. Further, we note that the Claimants' assignments of error as to the Personal Representative's alleged violations of §§ 30-2464 and 30-2473 are not contained in their claim. Therefore, we will not separately address them. An appellate court does not consider an argument or legal theory raised for the first time on appeal. *Junker v. Carlson*, 300 Neb. 423, 915 N.W.2d 542 (2018). However, to the extent that the requirements of those statutes are relevant to our analysis, we will consider them.

On cross-appeal, the Personal Representative alleges that the county court erred in denying his application and renewed application to pay fees and costs filed on December 21, 2016, and on July 14, 2017.

## STANDARD OF REVIEW

[2,3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013). In reviewing a lower court's grant of summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, giving that

- 823 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

party the benefit of all reasonable inferences deducible from the evidence. *Lauer v. Golden Living Center*, 28 Neb. App. 729, 947 N.W.2d 883 (2020).

[4] Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005).

[5,6] An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

The Claimants' assignments of error assert, for various reasons, that the county court erred in granting the Personal Representative's motion for summary judgment. As we will discuss below, the county court did not err in determining that their claim was barred under § 30-24,119. We also find no error in the county court's conclusion that the Claimants failed to produce evidence of fraud or fraudulent concealment that would toll the time for filing a claim.

### TIMELINESS OF CLAIM UNDER § 30-24,119

[7-9] In their claim, the Claimants alleged that the Personal Representative breached his fiduciary duty. It has long been the law of this state that the personal representative of an estate is a fiduciary as it relates to the beneficiaries of the estate. *Anderson v. Lamme*, 174 Neb. 398, 118 N.W.2d 339 (1962). As a fiduciary, the personal representative is required to make a full disclosure of all facts within his or her knowledge that are material for the beneficiaries to know so that they can protect their interest. *Id.* The Nebraska Probate Code, Neb. Rev. Stat. § 30-2201 et seq. (Reissue 2016), explains that a personal representative is a fiduciary of the estate. As such, the

- 824 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and the Nebraska Probate Code as expeditiously and efficiently as is consistent with the best interests of the estate. § 30-2464(a). If the personal representative of an estate exercises his or her power improperly and damages the estate or causes a loss as a result of the breach of fiduciary duty, then the personal representative is liable to interested persons in the estate. § 30-2473.

[10] A devisee or claimant may proceed against a personal representative for breach of fiduciary duty under § 30-24,119. See *Mach v. Schmer*, 4 Neb. App. 819, 550 N.W.2d 385 (1996). However, if devisees or claimants proceed under § 30-24,119, they must proceed within the limitations set forth in the statute. Section 30-24,119 provides:

> Unless previously barred by adjudication and except as provided in the closing statement, the rights of successors and of creditors whose claims have not otherwise been barred against the personal representative for breach of fiduciary duty are barred unless a proceeding to assert the same is commenced within six months after the filing of the closing statement. The rights barred by reason of the filing of the closing statement do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

[11,12] Under the plain language of this statute, the claimant must bring the action for breach of fiduciary duty within 6 months of the closing statement's being filed. See *Mach v. Schmer, supra*. The statutory time bar found within § 30-24,119 does not apply if the plaintiff is seeking to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate. *Id.*

The county court determined that the Claimants' claim was time barred pursuant to § 30-24,119 because the claim

- 825 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

was filed more than 6 months after the closing statement was filed and because there was no evidence of fraud, misrepresentation, or inadequate disclosure that would toll the time for filing a claim under the statute. The county court also found that the Claimants' claim was barred because it had been adjudicated at the hearing on February 13, 2014, when the estate was closed. Although the Personal Representative focuses much of his brief on appeal on whether the claim was previously adjudicated, we focus instead on the time limitation with respect to the closing statement. In so doing, we recognize that § 30-24,119 could be read in a manner similar to our finding as to § 30-24,120. As such, although there are some differences between the language of the two statutes, we could consider whether the prior adjudication bars the Claimants' claim. However, it is not necessary to make that determination here, since in this case, it is clear that the claim of the Claimants herein was not filed within the time limits prescribed by § 30-24,119.

[13,14] First, we must determine whether a closing statement was filed. The Nebraska Probate Code does not specifically define the term "closing statement." In interpreting the various sections of the Nebraska Probate Code, this court may examine the comments to the Uniform Probate Code. *In re Estate of Fuchs*, 297 Neb. 667, 900 N.W.2d 896 (2017). Under a specific section of the Uniform Probate Code, which is the basis for Neb. Rev. Stat. § 30-24,117 (Reissue 2016), the comment states that a closing statement is an affirmation by the personal representative that he or she believes the affairs of the estate to be completed. See Unif. Probate Code § 3-1003, 8 (part II) U.L.A. 470 (2013). In addition, the requirements for a closing statement are listed in § 30-24,117 as part of the Nebraska Probate Code. Section 30-24,117 provides that a personal representative may close an estate by a verified statement as long as the personal representative is not prohibited by order of the court and the estate is not being administered in a supervised administration proceeding. This verified statement

- 826 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

must be filed more than 5 months after the date of the original appointment of the personal representative. *Id.* The statement must state that the personal representative

(1) published notice to creditors as provided by section 30-2483 and that the first publication occurred more than four months prior to the date of the statement;

(2) fully administered the estate of the decedent by making payment, settlement or other disposition of all claims which were presented, expenses of administration and estate, inheritance and other death taxes, except as specified in the statement, and that the assets of the estate have been distributed to the persons entitled. . . .

(3) sent a copy thereof to all distributees of the estate and to all creditors or other claimants of whom he is aware whose claims are neither paid nor barred and has furnished a full account in writing of his administration to the distributees whose interests are affected thereby.

§ 30-24,117(a).

The Personal Representative concedes that he did not file a document with the title "closing statement." Nevertheless, it is clear from the record and the documents filed by the Personal Representative that he filed other, similar documents in which he affirmed that the affairs of the estate were completed. The Personal Representative filed a final report that was file stamped by the county court on January 10, 2014. In this final report, the Personal Representative attested that he, as personal representative, had received all income, payments, and receipts in Orville's estate and had paid all costs, expenses, and disbursements. The Personal Representative stated that he had received payment with regard to a promissory note executed by a debtor and noted that the promissory note was secured by property. Attached to the final report was an accounting. The Personal Representative also filed a "Formal Petition for Complete Settlement After Informal Testate Proceeding" that was file stamped by the county court on January 10. The Formal Petition stated that the notice to creditors was

- 827 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

published in compliance with Neb. Rev. Stat. § 30-2483 (Reissue 2016). On January 10, a hearing was scheduled by the court to be held on February 13. An affidavit of publication was submitted stating that notice was published in the Sidney Sun Telegraph for 3 consecutive weeks beginning on January 15. An affidavit of mailing notice of complete settlement was filed on January 17, stating that a copy of the notice for the hearing on the Formal Petition, schedule of distribution, and final report was sent to the Claimants at the addresses provided within the affidavit. On February 13, the court entered the Formal Order. In short, these documents established that the Personal Representative published and provided notice, fully administered the estate, and sent a copy to all distributees of the estate and furnished a full account in writing of the administration. In addition, these documents demonstrate an affirmation by the Personal Representative that the affairs of the estate were completed. Thus, the documents filed by the Personal Representative are consistent with a closing statement as described by the statutory requirements.

The Claimants allege that they never received the Formal Petition, the schedule of distribution, and the final report. The Claimants further allege that despite the date stamp on these documents, they were not actually placed within the court file at the time they were delivered to the court. While the documents were file stamped as having been received on January 10, 2014, it was found that the documents were not physically placed in the court file. We note, however, that at the hearing where this problem was discovered, the clerk indicated the documents did appear via computer. In any event, it is clear that on January 10, 2014, the court set hearing for February 13 regarding the Formal Petition that it had received.

[15] We recall that the controlling statutory language in § 30-24,119 requires the closing statement to be filed for the time barring of a claim against a personal representative to begin. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to

- 828 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014). Thus, we are tasked with determining when the documents were filed. The word "file" is defined as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record." Black's Law Dictionary 745 (10th ed. 2014). This is consistent with our previous interpretation where the endorsement of the clerk with a file stamp or an endorsement of a typed date by the clerk's signature determines the date of filing. See *State v. Muse*, 15 Neb. App. 13, 721 N.W.2d 661 (2006) (explaining that endorsement date of clerk either by file stamp or by typed endorsement is what is controlling for purposes of speedy trial statute). In the present case, the Personal Representative delivered the papers to the court clerk for placement into the official record. The clerk date stamped these documents on January 10, 2014. After receiving these documents, the court scheduled a hearing on February 13. Thus, the closing statement was filed with the court on January 10. Because the closing statement was filed in January 2014, the Claimants had 6 months from that filing date, or until July 10, to file a claim against the Personal Representative for breach of his fiduciary duty. They failed to do so, as they did not file such a claim until May 2017. Therefore, the action was time barred under the terms of § 30-24,119 unless a material issue of fact exists as to fraud, misrepresentation, or inadequate disclosure on the part of the Personal Representative.

## Inadequate Disclosure, Fraud, or Misrepresentation

To avoid the time bar of § 30-24,119, the Claimants also assign and argue that the Personal Representative committed inadequate disclosure, fraud, or misrepresentation. The county court found "no evidence of fraud, misrepresentation or inadequate disclosure that would toll the time for filing a claim under this statute." We find no error in this determination.

- 829 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

[16] Before addressing the merits of the arguments, we note the parties' disagreement as to what statute of limitations should apply to the Claimants' allegation. The Claimants argue that the general 4-year statute of limitations for actions not otherwise specified found in Neb. Rev. Stat. § 25-212 (Reissue 2016) should apply. The Personal Representative argues that Neb. Rev. Stat. § 30-2206 (Reissue 2016) should apply. Section 30-2206 requires that an action in a probate case based on fraud must be commenced within 2 years following the discovery of the fraud. The county court did not consider this issue. The county court simply found that no evidence of fraud, misrepresentation, or inadequate disclosure existed that would toll the 6-month limitation provided for by § 30-24,119. We agree with the court's conclusion. We find that none of the acts alleged by the Claimants constitute fraud, misrepresentation, or inadequate disclosure. Therefore, there is no basis for tolling the 6-month period of limitation found in § 30-24,119. If there is no basis for tolling, none of the argued statutes of limitation are applicable. The only applicable period is that provided for in § 30-24,119.

The Claimants assert that the Personal Representative provided inadequate disclosure with respect to the following: failing to provide notice for the complete settlement of the estate, a schedule of distribution, an accounting, and a final report or information. The Claimants also assert that the Personal Representative made misrepresentations in that the Personal Representative had a duty to reveal all known material facts in the schedule of distribution and failed to do so. They further argue that the Personal Representative had a duty to speak to them about the administration of the estate and that his silence would amount to a fraudulent misrepresentation. Finally, they allege that the misfiling of the Formal Petition for complete settlement and associated documents supports their claim. We address these allegations in turn.

[17] A personal representative may file a petition for an order of complete settlement. Neb. Rev. Stat. § 30-24,115

- 830 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

(Reissue 2016). The petition may request the court to determine testacy, consider the final account, approve an accounting and distribution, construe any will or determine heirs, and adjudicate final settlement and distribution of the estate. § 30-24,115(a). After notice and hearing, the court may enter an order determining the persons entitled to distribution of the estate, approve settlements, approve distributions, and discharge the personal representative from further claim or demand of any interested person. *Id.* If a personal representative files a petition for an order of complete settlement, he or she is required to give all interested persons notice, consistent with Neb. Rev. Stat. § 30-2220 (Reissue 2016), the general notice provision of the probate code. See *In re Estate of Wilson*, 8 Neb. App. 467, 594 N.W.2d 695 (1999) (explaining that general notice provision of probate code applies if notice of hearing on petition is required). The general notice provision requires the petitioner to mail a copy of the petition at least 14 days before the time set for the hearing by certified, registered, or ordinary first-class mail and publish at least once a week for 3 consecutive weeks a copy in a legal newspaper in the county where the hearing is to be held. § 30-2220(a).

In the present case, there is no dispute as to whether the Personal Representative published the notice with a newspaper of general circulation. A copy of the notice was attached to the affidavit of mailing notice of complete settlement executed by the attorney for the Personal Representative and was filed on January 17, 2014. The affidavit also notes the first date of publication. An affidavit of publication completed by the clerk of the Sidney Sun Telegraph was received in evidence establishing that the notice of hearing was published for 3 consecutive weeks, at least once per week, in Cheyenne County.

There is a dispute as to whether all of the Claimants received the documents included in the affidavit of mailing notice. We note that on the face of the affidavit, counsel for the Personal Representative recites that he provided a copy of the notice of hearing by U.S. mail together with copies of the Formal

- 831 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

Petition for complete settlement after the informal testate proceeding, schedule of distribution, and final report to the three Claimants at their last known addresses. An additional affidavit executed by counsel for the Personal Representative recites that none of the copies of the notice sent to the Claimants had been returned to his office.

The Personal Representative urges us to follow the presumption found in *Waite Lumber Co., Inc. v. Carpenter*, 205 Neb. 860, 290 N.W.2d 655 (1980). This presumption provides that a letter addressed, stamped, and mailed raises a presumption that the letter reached the addressee in the usual course of the mail. *Id.* This presumption may be rebutted by any relevant evidence; however, positive testimony by the addressee that a letter was not received simply raises a question of fact to be decided by the trier of fact. *Id.*

Marvin submitted an affidavit and a transcript of testimony from a prior proceeding involving Berniece's estate that he did not receive the notice of the hearing on the Formal Petition. He also stated that he did not receive the documents that were listed in the affidavit of mailing notice. However, Marvin did admit that his address listed on the affidavit of mailing was correct. There was no evidence presented by the Claimants that indicates that Krueger or Vegas failed to receive the notice of hearing or the other documents sent by counsel for the Personal Representative. The Claimants throughout these proceedings at trial and on appeal have claimed only that Marvin failed to receive notice and that somehow, by virtue of this failure, Krueger and Vegas have maintained an ability to join his claim.

The material issue, however, is not solely whether all three Claimants received the notice and accompanying documents. Section 30-2220 requires that the notice be mailed to the interested parties and published. The record in this case is clear that both of these things happened and that the addresses they were mailed to were correct. The fact that there is no claim by Krueger or Vegas that the notice and attached documents

- 832 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

were not received corroborates Matoon's affidavits. So while there may be some issue as to whether Marvin received the notice, his receipt of the notice is not a material issue of fact. Not all issues of fact preclude summary judgment, but only those that are material. In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012).

The Personal Representative, through counsel, fulfilled his statutory duty as to the provision of proper notice. Had Marvin filed a claim in his name only, a better argument could be made that a material issue of fact exists. However, the claim filed was filed collectively by Marvin, Krueger, and Vegas, "herein called 'heirs' or 'devisees,'" i.e., the Claimants. In their joint claim, they allege that none of them received notice. This assertion is not supported by any evidence. No affidavit was produced from any source stating that Krueger and Vegas did not receive notice. Moreover, there is no evidence to rebut the affidavits demonstrating that proper publication of the hearing was accomplished in the Sidney newspaper. Therefore, we can find no issue of material fact with regard to inadequate disclosure to the Claimants. This claim fails.

Next, the Claimants assert that the Personal Representative misrepresented the distribution to Berniece in the documents filed. According to the schedule of distribution, Berniece was awarded a loan to the Andersons in the amount of $25,000. No other distribution was listed. In the petition for settlement, the Personal Representative notes that Berniece has received by virtue of joint tenancy ownership and transfer of and assignment of the Andersons' promissory note at least $1 million as directed by Orville's will. The Claimants seem to argue that because the assets received by Berniece by virtue of joint tenancy or transfer or payable on death provisions were not listed in the schedule of distribution, final accounting, or Formal Petition, misrepresentation occurred. We disagree. The purpose of the schedule of distribution and associated documents is

- 833 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

to present to the court what distributable assets existed in the estate and how they were distributed. It was not necessary to list real or personal property that passed to other individuals outside of the estate. Here, there is a reference to nonprobate property received by Berniece to the extent it was necessary to show that Orville's wishes were honored with respect to Berniece's receiving at least $1 million of value. However, it was not necessary for the Personal Representative to make an itemized list.

We note that the original and amended inventories filed in 2010 fully listed the real and personal property held in joint tenancy with Berniece and those items that were payable on death to Berniece. The value attributed to those items was initially nearly $1.8 million. It is clear from the correspondence between Krueger, Vegas, and counsel for the Personal Representative that at least those two individuals were well aware of how much value could go to Berniece and that it was the attorney's position that she was entitled to receive property which was valued at more than $1 million. All of the Claimants subsequently became aware that Berniece was forfeiting her interest (based on joint tenancy) in the Sunol Property, which carried a value of nearly $600,000. In exchange, she asked for the Andersons' promissory note valued at $25,000. Based on the totality of the foregoing knowledge held by the Claimants, we cannot find that any fraud, misrepresentation, or inadequate disclosure was made in the filings of the Personal Representative leading to the final hearing.

For similar reasons, we find no merit to the Claimants' argument that the Personal Representative failed to talk with them about the administration of the estate and that his silence amounts to fraudulent misrepresentation. No facts were adduced supporting this position. Conversely, the record reveals exchanges of correspondence relative to the value of property received by Berniece. This argument fails.

Finally, the Claimants argue that fraud or inadequate disclosure is apparent based on the misfiling or lack of filing of

- 834 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

the Formal Petition for complete settlement and associated documents that were filed on January 10, 2014. While our record is not totally clear, it appears that these documents were not placed into the correct physical file, but were properly file stamped and did appear electronically. While any confusion the misfiling caused is unfortunate, there is no evidence to suggest that the misfiling was a result of actions taken by the Personal Representative. As a result, there can be no fraud, misrepresentation, or inadequate disclosure attributed to him. Moreover, as noted above, the evidence shows that at minimum, two of the three Claimants received these documents in the mail. Therefore, this argument fails as well.

Because all of the Claimants' arguments fail, we cannot find that the county court erred in granting the Personal Representative's motion for summary judgment. There was no fraud, misrepresentation, or inadequate disclosure that would toll the time bar found within § 30-24,119.

## Summary Judgment

[18] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018). A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Id.* When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy. *Id.* Where reasonable minds could draw different conclusions from the facts presented, a triable issue of material fact arises. *Id.*

Viewing and construing the evidence in the light most favorable to the Claimants and giving them the benefit of

all reasonable deductions from the evidence, we conclude that there is no genuine issue of material fact concerning the closing statement being filed on January 10, 2014, and that the Claimants' claim was filed more than 6 months after this filing. As discussed above, we conclude that there is no genuine issue of material fact in determining that there was no fraud, misrepresentation, or inadequate disclosure perpetrated by the Personal Representative. As such, the court did not err in granting the Personal Representative's motion for summary judgment and finding that the claim was time barred under § 30-24,119.

## Cross-Appeal

The Personal Representative has filed a cross-appeal alleging that the county court erred by denying him attorney fees and costs in an order dated May 16, 2017. The Personal Representative also alleges that the county court erred in denying his renewed application to pay fees and costs by virtue of an order dated July 26, 2017.

[19,20] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). An appellate court has jurisdiction over final orders that are appealed within 30 days from their entry. *Id.* See, also, Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2020). The Personal Representative filed his cross-appeal on September 28, 2020. Because the fee orders challenged in this appeal were issued more than 30 days prior to this appeal, we must determine whether they were final orders at the time they were entered. If so, we do not have jurisdiction to consider them now.

[21,22] Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020), an appellate court may review an order that affects a substantial right made during a special proceeding. A special proceeding entails civil statutory remedies not encompassed

- 836 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

in chapter 25 of the Nebraska Revised Statutes. *In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010). Proceedings under the Nebraska Probate Code are special proceedings under § 25-1902. *In re Estate of Rose*, 273 Neb. 490, 730 N.W.2d 391 (2007). See, also, *In re Estate of Muncillo, supra* (stating that Nebraska law is clear that proceedings under Nebraska Probate Code are special proceedings). The requests for fees and the orders denying fees in this case were made pursuant to Neb. Rev. Stat. § 30-2481 (Reissue 2016), which is contained within the Nebraska Probate Code. Section 30-2481 provides that a personal representative is entitled to receive reasonable attorney fees incurred in either defending or prosecuting a proceeding in good faith. The proceedings herein occurred under the Nebraska Probate Code and therefore constitute special proceedings.

[23-26] Having determined that the fee orders were made in a special proceeding, we next must consider whether they affected a substantial right. A substantial right is an essential legal right, not a mere technical right. See *In re Estate of Muncillo, supra*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *In re Guardianship & Conservatorship of Forster, supra*. If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case. *Id.* Fee orders in a probate case are made in a special proceeding; an order awarding a personal representative fees affects a substantial right when it finally determines the personal representative's claim for reasonable compensation under Neb. Rev. Stat. § 30-2480 (Reissue 2016). See *In re Guardianship & Conservatorship of Forster, supra*.

We have previously determined that the fees for a temporary guardian that are still ongoing are not appealable until the court enters its final order terminating the guardianship and conservatorship and discharging the guardian and conservator from his or her duties. See *id.* In *In re Guardianship*

- 837 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

*& Conservatorship of Forster*, we determined that the orders awarding fees to the guardian and conservator did not finally determine the guardian and conservator's claim for reasonable compensation. We relied on the reasoning of the Nebraska Supreme Court in *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014). In *In re Estate of Gsantner*, the court determined that the fees to a personal representative were a final order because the order finally determined the personal representative's claim for reasonable compensation. In that case, the personal representative was awarded a total of $25,000 while the estate had been partially distributed and the personal representative continued to serve as personal representative. The trial court did not state that the award was a partial fee; nor did it include any language that would indicate that the award was subject to later revision or augmentation. *Id.* The court noted that the personal representative's award was made after a special evidentiary hearing was held on the issue of fees. *Id.*

With this reasoning in mind, we turn to the present case. The Formal Order for complete settlement was entered by the court in February 2014. The Personal Representative filed an application to pay fees and costs for work done relative to the Claimants' claim in Berniece's estate between October 31, 2016, and the filing of the motion on December 21. The county court denied this request on May 16, 2017. Specifically, the county court found that the application to pay fees and costs was filed in the wrong estate and denied the application to pay fees and costs. There was no language in the order to indicate that the award was subject to a later revision.

On July 14, 2017, the Personal Representative filed a renewed application to pay fees and costs for work done through June 30, defending his actions in both Orville's estate and Berniece's estate. The request in this motion included those fees which had been previously requested and denied on May 16 and those fees for additional work done through June 30. The Personal Representative also filed a motion for leave

- 838 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FILSINGER
Cite as 29 Neb. App. 809

to file additional evidence on the issue of attorney fees and costs. The court held a hearing on July 21 regarding the motion for leave to file additional evidence on the issue of attorney fees and costs. This motion was denied on July 26. At the close of the hearing, the court reiterated that Orville's estate had been closed at the request of the Personal Representative. The order gave no indication that it was subject to later revision. It appears to be fully dispositive of the Personal Representative's motion at the time. Based on the reasoning in prior cases, we believe that both orders entered by the county court were fully dispositive of the Personal Representative's requests for attorney fees. Therefore, each order constituted a final order. As such, any appeal had to occur within 30 days after each of the orders. Consequently, we do not have jurisdiction to hear the cross-appeal and it must be dismissed.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the county court in granting the Personal Representative's motion for summary judgment. We also dismiss the cross-appeal filed by the Personal Representative for lack of jurisdiction.

AFFIRMED IN PART, AND IN PART DISMISSED.