IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE ESTATE OF FILSINGER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF ORVILLE W. FILSINGER, DECEASED.

ROBERT R. RAUNER, JR., APPELLEE AND CROSS-APPELLANT,

V.

MARVIN FILSINGER, APPELLANT AND CROSS-APPELLEE,
AND STEVEN F. MATTOON ET AL., APPELLEES.

Filed June 13, 2023.    No. A-22-596.

Appeal from the County Court for Cheyenne County: RUSSELL W. HARFORD, Judge. Affirmed in part as modified, and in part vacated and remanded with directions.

Robert M. Brenner and Jessica Laughlin, of Robert M. Brenner Law Office, for appellant.

R. Kevin O'Donnell, of O'Donnell & Holmstedt, P.C., L.L.O., for appellee, Robert R. Rauner.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Marvin Filsinger (Filsinger) appeals, and Robert R. Rauner, Jr., personal representative of the estate of Orville W. Filsinger, cross-appeals, from an order of the county court for Cheyenne County. The court's order, among other things, permitted Rauner to pay from the estate's funds attorney fees to two different attorneys who had represented him during the administration of the estate and to pay himself an additional personal representative fee. The order also required Filsinger to pay sanctions in the amount of $500 for raising a "frivolous" claim in his pleadings. The court denied Filsinger's request to award him interest on any sums due and owing to him from

- 1 -

the estate. For the reasons set forth herein, we in part affirm the order of the county court as modified. We vacate that part of the court's order which awards attorney fees to attorney R. Kevin O'Donnell and remand that issue to the county court for further evidentiary hearing.

## II. BACKGROUND

Orville died in September 2009 in Cheyenne County. Pursuant to a provision found in the will signed by Orville in December 2002, Rauner was nominated by Orville to be the personal representative of the estate. Rauner accepted the appointment.

Rauner initiated the probate case for Orville's estate in October 2009, more than 13 years ago. Because there has been a great deal of litigation in both Orville's estate and in the estate of his wife, Berniece Filsinger, the probate case has not been formally completed. For a more complete history of the litigation in the probate case for Orville's estate, see this court's previous opinion, *In re Estate of Filsinger*, 29 Neb. App. 809, 962 N.W.2d 366 (2021) (*Filsinger I*). We focus our recitation of the facts on that portion of the case's history which pertains to the issues currently on appeal.

On January 10, 2014, Rauner filed in the probate case a formal petition for complete settlement, a schedule of distribution, and a final report and accounting. On February 13, 2014, the county court signed an order approving the final report and accounting and the schedule of distribution. The court's order indicated that Rauner's authority as personal representative would end, and he would be discharged from his position upon his filing of a federal fiduciary tax return.

Almost three years after the final report and accounting was approved by the county court, Rauner filed an application for attorney fees. In the application, he asked that the court award O'Donnell attorney fees pursuant to Neb. Rev. Stat. § 30-2481 (Reissue 2016). Specifically, Rauner alleged that O'Donnell represented him in his capacity as personal representative of Orville's estate in litigation which was initiated in the probate case for Berniece. Attached to Rauner's request for attorney fees, was an affidavit by O'Donnell which indicated he worked with Rauner on Orville's estate case for "68.75 hours in July, 2016; 20.70 hours in August, 2016, 9.80 hours in September, 2016; and, 30.65 hours in October 2016." O'Donnell also indicated that he had advanced Orville's estate costs in the amount of $517.50. O'Donnell indicated that the total fees and costs owed to him for his work on Orville's estate through October 2016 was $20,996.

In an order entered on May 16, 2017, the county court denied Rauner's request for attorney fees. The court indicated that Orville's estate was effectively closed in February 2014 after the court had approved Rauner's final report and accounting. The county court believed that O'Donnell's work for Rauner was in the context of the probate case for Berniece's estate, rather than in the context of the probate case for Orville's estate and that the claim for fees should have been made against Berniece's estate.

On May 24, 2017, Filsinger and the other heirs of Orville's estate filed a claim in Orville's estate alleging that Rauner erroneously distributed $200,000 in estate assets to Berniece, when those assets should have been distributed to the other heirs in accordance with Orville's will. The claim indicated that Rauner intentionally misled the heirs about the distribution and fraudulently concealed his actions from the heirs. Rauner filed a notice of disallowance of this claim on June 25, 2017.

Partially in response to the claim filed by Filsinger and the other heirs on May 24, 2017, Rauner filed a petition for limited re-opening of Orville's estate on June 1, 2017. In this petition, Rauner explained that he was never actually discharged as personal representative for Orville's estate because he continued to manage incoming assets received by the estate after the February 2014 order which had approved his final report and accounting. Rauner asked that the estate now be formally re-opened "for the purpose of re-examining the issue of attorney fees and costs, submitting additional evidence regarding attorney fees and the representation of [Rauner] in his capacity of Personal Representative, and responding to the Claim Against Personal Representative." There is nothing in our record to indicate that Filsinger or the other heirs specifically objected to Rauner's request to re-open the estate. The heirs did, however, object to Rauner continuing as the personal representative.

On June 5, 2017, the county court entered an order re-opening Orville's estate and indicating that Rauner should continue to operate as personal representative of the estate. The county court stated: "[A]s of the execution of this Order, the Estate of Orville W. Filsinger [is] re-opened; that the powers, duties, and authorities of [Rauner], Personal Representative, continue; and that this Estate remain open until further Order of this Court."

Once the estate was re-opened, Rauner filed a renewed application to pay fees and costs. Essentially, this renewed application asked the county court to reconsider its prior denial of attorney fees for O'Donnell. An affidavit attached to the renewed application indicated that O'Donnell's fees through June 2017 totaled $51,217.20. The court denied the motion on July 26, 2017, explaining that because Rauner was released from his duties of personal representative by operation of law 1 year after the formal order of settlement was entered in February 2014 and no further claims were made in the estate during that time, no further attorney fees were warranted.

In a journal entry authored by the county court on August 8, 2017, the court indicated that it was staying the probate case in Orville's estate while this court had before it an appeal in the probate case involving Berniece's estate. Litigation in the probate case involving Orville's estate did not resume until December 2019.

In December 2019, Rauner filed a motion for summary judgment on the heirs' pending petition for allowance of claim; their claim against Rauner; and their petition to remove Rauner as personal representative. After a hearing, the county court granted Rauner's motion for summary judgment. Filsinger and the other heirs appealed the county court's decision to this court. In addition, Rauner appealed from the county court's prior denials of his requests for attorney fees.

On appeal, this court affirmed the decision of the county court to grant Rauner's motion for summary judgment, finding that the claim against Orville's estate filed by Filsinger and the other heirs was time barred and that there was no fraud, misrepresentation, or inadequate disclosure perpetrated by Rauner in his position as personal representative. As to Rauner's cross-appeal, this court concluded that we did not have jurisdiction to address the county court's denial of attorney fees because Rauner had failed to timely appeal from the county court's orders.

Upon our remand to the county court, Rauner filed a petition for final payment of costs and administration, distribution of assets, and discharge of personal representative on behalf of Orville's estate. In the petition, Rauner made the following requests for distribution from estate funds: $5,000 for personal representative fees to be paid to him, $69,901.72 in attorney fees and costs to be paid to O'Donnell, and $13,550 in attorney fees and costs to a second attorney, Steven

F. Mattoon. The petition further requested that the court approve specific disbursements of $29,500 each to Filsinger and another heir and that all three heirs then be disbursed one-third of the remaining estate balance.

Filsinger filed a response to Rauner's petition. Essentially, Filsinger's response argued that no payment should be made to either of the attorneys or to Rauner, as personal representative, because the estate was closed in February 2014. Rauner's petition and Filsinger's response are the operative pleadings from which this appeal arose.

After a hearing, the county court entered a detailed order addressing each of Rauner's requests for distribution and Filsinger's objections to those requests. As is relevant to this appeal, the county court granted a portion of Rauner's request for attorney fees for O'Donnell and Mattoon.

The court awarded O'Donnell the attorney fees incurred after July 21, 2017, as the prior incurred fees were disallowed by previous orders of the court. The court awarded Mattoon all of the attorney fees incurred since the inception of the probate case, as his

> application for fees and expenses was not subject to this Court[']s prior orders of May 5, 2017 denying the fees and expenses because it was filed in the wrong estate or the order of July 21, 2017 requesting leave to provide additional evidence on fees and expenses. Those orders related directly to Mr. O'Donnell's fees and expenses.

In addition to the amount of itemized fees awarded to Mattoon, the court awarded him fees in the amount of $1,726. The court explained,

> While Mr. Mattoon's billing statement only reflects that Mr. Mattoon incurred fees and expenses of $11,774 through June 6, 2022, that billing statement did not include any additional legal fees in representing the Personal Representative in these contested proceedings to finalize administration of this estate. It is reasonable to allow an additional sum of $1,726 for legal fees and expenses of Mr. Mattoon as requested by the [personal representative]. It is ordered that the Personal Representative pay, from assets of the estate, the sum of $13,500.00 for Mr. Mattoon's services.

The court also awarded Rauner additional personal representative fees in the amount of $5,000, explaining,

> While [Rauner] may not have had to appear in court, because of the amount of litigation in this case, [he] has had to administer this estate for nearly 13 years. He has frequently been accused of mismanaging the estate and has been sued in the District Court. It is not unreasonable for the Personal Representative to seek additional compensation from the estate.

The county court denied Filsinger's request for interest payments on the amount due and owing to him from the estate. The court reasoned that Rauner was previously unable to determine the final payment owed to the heirs until all the other outstanding issues involving fees and expenses had been resolved.

In addition to the requested fees, the court ordered Filsinger to pay $500 in attorney fees as a sanction for asserting a frivolous claim in his response to Rauner's petition. Specifically, the

court found that Filsinger's claim that Rauner committed fraud, misrepresentation, or inadequate disclosure and distribution of information at the February 13, 2014 hearing, was frivolous as it was previously asserted, litigated, and resolved in the county court and by this court on appeal.

Finally, the court addressed an issue regarding two checks, one issued to Filsinger and the other to Gloria Haines in 2014. The amount of each check was $29,500 and were partial distributions of their respective shares of the estate. Neither check had been cashed. The court gave Haines and Filsinger 10 days to formally request reissuance of their checks. If either of them were to fail to timely request reissuance of their checks, the personal representative was entitled to consider that Filsinger and/or Haines had renounced their respective interest in their $29,500 check and the amount of that check would be added back into the residuary estate.

Filsinger appeals, and Rauner cross-appeals, from the county court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Filsinger assigns and argues, restated and renumbered, that the county court erred in the following decisions: permitting the estate to be re-opened in June 2017; awarding attorney fees to both Mattoon and O'Donnell; awarding additional personal representative fees to Rauner; failing to award Filsinger any interest on the amount he is still owed by the estate; and ordering Filsinger to pay sanctions for filing a frivolous pleading.

Rauner has filed a cross-appeal. In the cross-appeal, Rauner assigns that the county court erred: in failing to grant the entirety of his request for fees and costs; in not ordering a higher amount of sanctions for Filsinger's filing of a frivolous pleading; and in finding that Orville's estate was closed in February 2014. However, in the argument section of Rauner's brief, he only argues his assigned error regarding whether the estate was closed in February 2014. Rauner also includes in his argument section, a discussion of whether the acceptance of benefits rule precludes Filsinger's appeal. Given Rauner's failure to both assign and argue many of the issues raised in his cross-appeal, the only issue raised by Rauner on cross-appeal that we will address in this appeal is the question of whether the estate was closed in February 2014. Appellate courts will address only assignments of error that are both assigned and argued. See *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

We will address Rauner's argument that the acceptance of benefits rule should preclude Filsinger's appeal. That issue could not have been raised before the county court. We note that this argument would be more appropriately located in the appellee portion of Rauner's brief, but we will nonetheless consider it.

## IV. STANDARD OF REVIEW

Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. See *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. When reviewing a decision of the probate court, the appellate court does not reweigh the evidence and must consider the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference available from the evidence. *Id*.

Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to § 30-2481, which governs expenses in estate litigation, is within the sound discretion of the county court. *In re Estate of Graham, supra*. Moreover, when an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Id*.

On appeal, an appellate court will uphold a lower court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation in the absence of an abuse of discretion. *Korth v. Luther*, 304 Neb. 450, 935 N.W.2d 220 (2019).

## V. ANALYSIS

### 1. APPLICABILITY OF ACCEPTANCE OF BENEFITS RULE

Rauner contends that the present appeal should not be allowed to proceed because Filsinger accepted a benefit conferred on him in the county court's July 27, 2022 order. Specifically, Rauner notes that the county court gave Filsinger 10 days to request that he, as personal representative, reissue a check, originally issued in 2014 in the amount of $29,500 that Filsinger did not previously cash. According to Rauner's brief, it is unclear whether Filsinger requested and in fact cashed his check. The same allegation was made with regard to Filsinger's sister, Haines. However, Rauner asserts that another sister, Javonne Kreuger, did in fact cash her original check. Since she cashed her check, Rauner argues that an appellant's acceptance of benefits of part of the judgment should preclude an appeal.

Were this the sum total of Rauner's position, it would be easily resolved as Filsinger is the lone appellant in this case. Therefore, his sister's acceptance of a benefit would have no bearing on the present appeal. However, Rauner has also filed a motion for relief under Neb. Rev. Stat. § 30-1601(6) (Cum. Supp. 2022). In that motion, Rauner alleges that Filsinger and Haines both timely requested reissuance of their distribution checks and that checks for $29,500 were provided to each of them in response to their requests. The motion is supported by the affidavits of Rauner and Mattoon with attachments thereto. Since Filsinger received this benefit which is rooted in the court's July 27, 2022 order, Rauner contends that Filsinger has accepted the benefits of that order. In Rauner's view, sanctions should be imposed since his appeal is precluded by the acceptance of benefits rule and is therefore frivolous and vexatious.

Assuming without finding that Filsinger did accept his distribution of $29,500, we still reject Rauner's contention. Under the acceptance of benefits rule, an appellant may not voluntarily accept the benefits of part of a judgment in the appellant's favor and afterward prosecute an appeal or error proceeding from the part that is against the appellant. *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020). However, the acceptance of benefits rule has exceptions.

> An exception to the acceptance of benefits rule exists where the right to the benefit accepted is absolute and cannot possibly be affected by reversal of the judgment. It is the possibility that appeal may lead to a result showing that the party was not entitled to what was received under the judgment appealed from that defeats the right of appeal. Where there is no such possibility, the right to appeal is unimpaired by the acceptance of benefits under the judgment appealed from.
>
> > Thus, the acceptance of benefits rule has no application where one is shown to be so absolutely entitled to the sum collected or accepted that reversal of the judgment or

- 6 -

decree will not affect his or her right to it, as in the case of a collection of an admitted or uncontroverted part of his or her demand. The rule does not apply when the appellant is conceded to be entitled to the thing he or she has accepted and where the appeal relates only to an additional claim on his or her part.

*Liming v. Liming*, 272 Neb. 534, 539, 723 N.W.2d 89, 94 (2006) (citations omitted).

Here, the original distribution was authorized and made in 2014. Filsinger, for reasons not apparent from the record chose not to cash the original check. Our record is completely devoid of any evidence that Rauner opposed this distribution either in 2014 or at any time thereafter, including the June 7, 2022, hearing from which the court's July 27 order was entered. Rauner does not contend on appeal that Filsinger is not entitled to this distribution or that there is insufficient funds to pay the court ordered fees based on the reissuance of the distribution check. Therefore, since Filsinger's entitlement to this distribution has been conceded, the acceptance of benefits rule does not apply. Rauner's argument, as well as his motion for relief are without merit.

### 2. STATUS OF ORVILLE'S ESTATE DURING PROCEEDINGS

The parties dispute the status of the proceedings governing Orville's estate since February 2014. In Rauner's cross-appeal, he questions whether the estate was ever closed, as was found by the county court in an order filed in May 2017. In Filsinger's appeal, he questions the propriety of the county court's decision to re-open the estate proceedings in June 2017. We address each of the parties' arguments in turn.

In an order filed in May 2017, the county court denied Rauner's request to pay attorney fees to O'Donnell. The court indicated its belief that Rauner's request for such fees should have been made in Berniece's estate. As a part of its findings, the county court stated, "the estate now before this court, the Estate of Orville W. Filsinger, was closed by order of this court in February 2014." In Rauner's cross-appeal, he purports to challenge the county court's finding in the May 2017 order that Orville's estate was closed in February 2014. However, Rauner cannot now challenge the May 2017 order. In *Filsinger I*, we explicitly found that the order entered by the county court in May 2017 was a final order which could, and should, have been appealed from within 30 days after its entry. Neither party timely filed an appeal from that order and, as such, the May 2017 order cannot now be challenged in this appeal.

For the sake of completeness, we note that Rauner's attempt to challenge the county court's finding that the estate was closed in February 2014 appears to be for the purpose of arguing that the county court should have ordered all of O'Donnell's attorney fees to be paid by the estate, even those incurred prior to the estate's reopening in June 2017. However, Rauner cannot now challenge the court's denial of fees to O'Donnell for the time when the estate was, apparently, closed. First, Rauner did not both assign and argue this issue in his brief on cross-appeal and, as such, we will not address it. Second, the county court has issued two prior orders denying O'Donnell attorney fees for this time period. Such orders were final and were not timely appealed. We will not revisit the issue of O'Donnell's fees prior to June 2017 in this appeal.

In his appeal, Filsinger challenges the county court's decision to re-open Orville's estate in June 2017. However, our record does not reflect that Filsinger raised any objection to Rauner's request to re-open the estate. We recognize that Rauner's request to reopen the estate was granted

just four days after it was filed. However, no objection was ever made to the reopening either before or after the entry of the court's order. As such, Filsinger has waived appellate review of this issue. An issue not properly presented to and passed upon by the trial court may not be raised on appeal. *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990). Filsinger's assertion is not properly before this court.

### 3. AWARD OF ATTORNEY FEES

In his brief on appeal, Filsinger challenges the county court's decision to award any attorney fees to O'Donnell or to Mattoon for their work with Rauner as personal representative of Orville's estate. As a general rule, attorney fees and expenses are recoverable only where provided for by statute or when a recognized and accepted uniform course of procedure exists to allow recovery of attorney fees. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). Here, Rauner sought fees for the two attorneys pursuant to § 30-2481, which states: "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." We address the county court's award of fees to each attorney in turn.

### (a) O'Donnell

In his brief on appeal, Filsinger asserts that the county court's award of attorney fees to O'Donnell was in error because there was absolutely no evidence in the record to support any such award. We disagree that the record is devoid of evidence supporting an award of fees to O'Donnell. The transcript discloses that an affidavit which itemized attorney fees incurred by the personal representative for O'Donnell's services from July 2017 through February 2021 was attached to Rauner's petition. Our record does not demonstrate that the affidavit was offered and received into evidence, however. It is clear from the county court's July 27, 2022, order that the court utilized the affidavit in computing the amount of fees ordered. The court explicitly found that $51,217.20 of the request was disallowed as that amount represented fees rejected by its prior orders. However the court allowed the remaining fees of $18,684.52 which, according to the court's order, represented fees incurred after July 21, 2017. Our difficulty is that on appeal, this specific sum is not supported by the evidence adduced at the hearing. In our review of the county court's award of attorney fees to O'Donnell, we do not consider the affidavit included as an attachment to the petition. *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014).

> This finding does not end our inquiry, however. We have previously found that:
> it is not strictly necessary for an applicant for attorney fees to introduce specific evidence to support an award of attorney fees, but before an award of attorney fees will be affirmed on appeal, the record must contain the information that shows that the award is within the range of the trial court's discretion . . . . If the contents of the record, i.e., pleadings, introduced discovery documents, time spent in court as shown by the court record, and doubtless many other items which will support the award, do show the allowed fee not to be unreasonable, then that fee would not be untenable for an abuse of discretion.

*Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000). See also *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014) (holding that filing of attorney fee affidavit is not absolute requirement for award of reasonable attorney fees).

Here, the available record demonstrates that O'Donnell has spent a considerable amount of time providing legal representation to Rauner. There is little question that, at least as to the legal services provided following the July 2017 denial of fees, payment of fees to O'Donnell from the estate are justified. The amount of fees to be ordered however is uncertain, given our inability to consider the fee affidavit. We faced a similar scenario in *In re Guardianship & Conservatorship of Forster, supra.* There, as here, a motion and affidavit for attorney fees was "on file" but never received into evidence during the course of a hearing. The trial court nonetheless awarded attorney fees in conformity with the affidavit. We found that the award of such fees was not supported by competent evidence. We then vacated the orders awarding fees and remanded the matter to the county court with directions to hold an evidentiary hearing. We follow the same course here. We vacate the county court's order awarding attorney fees to O'Donnell and remand this issue to the county court with directions to hold a further evidentiary hearing.

(b) Mattoon

Filsinger also challenges the award of attorney fees to Mattoon. Filsinger asserts that Mattoon should not be awarded any fees because his legal work "occurred in [a] closed estate." Brief for appellant at 26. In the alternative, Filsinger asserts that Mattoon should have been awarded less fees than what the county court ordered because some of the fees awarded had been previously denied by the county court; because Mattoon had previously been partially paid for his work by the estate; and because the county court "arbitrarily" added an additional $1,726 in fees than what was asked for in Mattoon's affidavit.

The county court awarded Mattoon $13,500 in attorney fees to be paid from the assets of Orville's estate. The court calculated the amount of fees awarded to Mattoon by relying on Mattoon's itemized affidavit which was received in evidence. That affidavit indicated that from October 15, 2014 through June 6, 2022, Mattoon's legal fees for Rauner, as personal representative, totaled $11,774. The court determined that Mattoon should be awarded an additional $1,726 to account for "any additional legal fees in representing [Rauner] in these contested proceedings to finalize administration of the estate."

In his brief on appeal, Filsinger asserts that the county court erred in awarding Mattoon any legal fees because such fees were incurred for an estate that had already been closed. Upon our review, we find no abuse of discretion in the county court's decision to award Mattoon attorney fees for his work representing Rauner as personal representative of the estate. While the county court did determine that the estate was closed in February 2014 after Rauner filed a final report, Rauner's work on the estate did not cease at that point as a result of ongoing litigation initiated by Filsinger and the other heirs. Mattoon provided counsel to Rauner regarding this litigation. Mattoon's itemized billing affidavit references multiple hearings attended, depositions prepared for, and court documents reviewed during the time when the estate was believed to be closed. Moreover, we note that it is clear from our record that the estate was re-opened in June 2017, and that there was significant attorney fees incurred after that point in time. The county court was well aware of the ongoing litigation and continuing proceedings which occurred in this case. We defer

to the county court's intimate knowledge on this subject and decline to find any abuse of discretion in its decision to award Mattoon attorney fees.

We next address Filsinger's assertion that the county court erred in the amount of attorney fees awarded to Mattoon. Filsinger argues that the court erred in awarding fees that it had previously denied. Mattoon's affidavit reflects that his attorney fees for October 15, 2014 through May 24, 2017, totaled $7,650. In his brief to this court, Filsinger asserts that "[t]hese were fees denied by the Trial Court earlier in the process" when Rauner sought those fees in an application dated December 21, 2016. Brief for appellant at 25. Our record does not support Filsinger's assertion. Rauner's application to pay fees and costs filed in December 2016 only requested payment of O'Donnell's attorney fees. It did not request payment for Mattoon's fees. As such, we do not find any support for Filsinger's assertion that Mattoon should not have received payment for fees incurred from October 15, 2014 through May 24, 2017, because such fees were previously denied. We agree with the finding of the county court that the previous denials of attorney fees related only to O'Donnell's fees.

Filsinger also asserts that the amount of fees awarded to Mattoon should be reduced by prior payments made to Mattoon by the estate. In the supplemental final report for the estate filed by Rauner on May 2, 2022, he details all amounts received and all amounts paid by the estate from January 2014 through December 2020. Such report indicates that two payments were made to Mattoon or to Mattoon's law firm for "attorney fees" during that time period. Mattoon was paid $1,646.31 in fees on June 20, 2014, and was paid an additional $972.25 in fees on September 26, 2016. We do not consider the fees paid to Mattoon in June 2014, because Mattoon's affidavit indicates that he is asking for fees incurred on or after October 15, 2014. As such, the June 2014 payment predates the current attorney fees request. However, the fees paid to Mattoon in September 2016 are encompassed within the time frame of Mattoon's current request for fees. We cannot find anything in our record or in the county court's order which reflects that such prior payment was considered or deducted from the amount of fees awarded to Mattoon. As such, we reduce Mattoon's attorney fee award by $972.25, the amount paid to him by the estate in September 2016 for legal services rendered.

Finally, Filsinger asserts that the county court should not have awarded Mattoon more attorney fees than what were reflected in his affidavit. Filsinger asserts, "As noted by the Trial Court, it simply added an additional arbitrary sum of $1,726 of fees" to Mattoon's request. Brief for appellant at 25. According to the county court's order, such additional fees were added in order to compensate Mattoon for "representing [Rauner] in these contested proceedings to finalize administration of this estate." The county court indicated that Mattoon's itemized affidavit did not account for any fees incurred after June 6, 2022, which was the day before the hearing on Rauner's final petition.

We agree with Filsinger that the record presented to the county court does not support the addition of $1,726 in attorney fees. Mattoon's affidavit did not specify what, if any, additional attorney fees could be anticipated after June 6, 2022. While it could be anticipated that some fees would be incurred for Mattoon's appearance at the hearing, no record was made of how much additional attorney time could be attributed to that hearing or to any further services that Mattoon would be rendering. As such, the additional award appears speculative and we find that the award of $1,726 for additional attorney fees to be paid to Mattoon for unspecified services constituted an

abuse of discretion. Therefore, we reduce the award of attorney fees to Mattoon by $972.25 based on the prior payment of fees and $1,726 for the fees awarded that are not supported by the record. We reduce the order for fees to be paid to Mattoon to $10,801.75.

### 4. AWARD OF ADDITIONAL PERSONAL REPRESENTATIVE FEES

The county court awarded Rauner $5,000 in "additional" fees for serving as personal representative for the estate. The court noted that by January 2014, Rauner had been paid a total of $14,980 in personal representative fees for his services from the time of the estate case's inception in 2009 through the time of his filing the January 2014 final report. The county court found that Rauner's request for an additional $5,000 in fees to account for his work from February 2014 through June 2022 was warranted. The court stated:

> While he may not have had to appear in court, because of the amount of litigation in this case, [Rauner] has had to administer this estate for nearly 13 years. He has frequently been accused of mismanaging the estate and has been sued in District Court. It is not unreasonable for [Rauner] to seek additional compensation from the estate. It is ordered that [Rauner] pay himself, from assets of the estate, an additional [personal representative] fee of $5,000.

On appeal, Filsinger asserts that the county court erred in awarding Rauner $5,000 in personal representative fees. Filsinger argues that Rauner did not provide any evidence to support such an award of personal representative fees and that an award of fees is not warranted when Rauner did not act in the best interests of the estate or the heirs in administering the estate.

Neb. Rev. Stat. § 30-2480 (Reissue 2016) provides, in part, "A personal representative is entitled to reasonable compensation for his services." The term "reasonable compensation" is not defined in § 30-2480. However, Neb. Rev. Stat. § 30-2482(2) (Reissue 2016) provides a list of factors "to be considered as guides in determining the reasonableness of a fee" awarded to a personal representative or a person employed by the personal representative. The factors to be considered are as follows:

> (a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
> (b) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;
> (c) The fee customarily charged in the locality for similar services;
> (d) The amount involved and the results obtained;
> (e) The time limitations imposed by the personal representative or by the circumstances;
> (f) The nature and length of the relationship between the personal representative and the person performing the services; and
> (g) The experience, reputation, and ability of the person performing the services.

§ 30-2482(2).

Additionally, as we noted above, an award of fees to the personal representative can also be supported by § 30-2481, which provides, "If any personal representative or person nominated

as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." The Nebraska Supreme Court has held that a person seeking to recover fees under § 30-2481 must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable. *In re Estate of Giventer*, 310 Neb. 39, 964 N.W.2d 234 (2021).

We note that no itemized affidavit or other evidence outlining Rauner's time spent attending to his duties as personal representative appear in our record. The absence of this information makes our task more difficult. However, we cannot discount the rationale given by the county court in approving Rauner's request for fees. The county court clearly found that Rauner's work for the estate since January 2014 was performed in good faith and was necessary. The record establishes that after January 2014 Rauner continued to represent the interests of the estate for more than eight years. During this time, he successfully defended a series of lawsuits and claims initiated by Filsinger and the other heirs, including a suit filed against him personally in the district court. The record also indicates that during this period, Rauner continued to receive assets for the estate and preserved those assets for the heirs upon the end of the litigation. Essentially, we find, as did the county court, that the totality of the circumstances surrounding this estate case supports an award of personal representative fees to Rauner in the amount of $5,000. Filsinger's arguments to the contrary lack merit.

### 5. No Interest Awarded to Filsinger

The May 2022 supplemental final report filed by Rauner reveals that since the filing of his prior final report in January 2014, the estate has regularly and continuously received additional assets. In January 2014, the estate had a total of $65,100 in its account. By May 2022, that total had grown to $189,596.98. Included in this amount were two outstanding checks written by the estate in June 2014. One was a disbursement made to Filsinger in the amount of $29,500. The other was an identical disbursement made to his sister. These checks were never cashed.

In the county court, Filsinger argued that he should be awarded interest on the money owed to him by the estate as one of Orville's heirs. He contended that Rauner unlawfully retained the funds which could, and should, have been paid out to the heirs in 2014. Filsinger conceded that he had received a check from the estate in the amount of $29,500, but that he had not cashed the check because "he was never shown how that figure was calculated."

In its order, the county court denied Filsinger's request for interest. The court stated:

> For the past 9 years, there have been a multitude of court hearings, both in this Court and the District court, initiated by the [heirs], including Mr. Filsinger. It is ironic that Mr. Filsinger now complains about the delay in distribution of estate assets when he and the other [heirs] have been instrumental in creating that delay.

The county court went on to explain its belief that Rauner could not in good faith have distributed the estate's assets prior to the resolution of the litigation and the final award of attorney fees as well as other fees and costs: "It was and is impossible to determine the final payment to the heirs until the issue of attorney's fees and [personal representative] fees is determined by the Court." Filsinger appeals from the denial of his request for interest.

Upon our review, we find no error in the county court's denial of interest to Filsinger. Requiring Rauner, as personal representative, to pay interest to Filsinger would be inequitable, when the delay in the disbursement of estate assets has been caused, in large part, by litigation filed by Filsinger which has prevented the speedy administration of the estate. See *In re Estate of Kierstead*, 128 Neb. 654, 259 N.W. 740 (1935). The disbursement of estate assets was delayed by the litigation initiated by Filsinger and the other heirs in this case, in Berniece's estate case, and in a district court case brought against Rauner, individually. As personal representative, Rauner could not disburse the entirety of the estate assets until such litigation was resolved and attorney fees and other expenses were paid. In addition, we note the evidence that the estate continued to regularly receive additional assets after January 2014. Such additions added to the difficulty in providing the heirs their final disbursements. Filsinger did receive disbursements during the course of the estate administration. One disbursement check was provided to Filsinger in June 2014, but he chose to not cash it. Clearly no interest as to those funds was warranted, as it was Filsinger's choice to not accept the disbursement. We affirm the decision of the county court denying Filsinger any interest on the money retained by the personal representative in the estate account pending final closure of the estate.

### 6. FILSINGER TO PAY SANCTIONS

In Filsinger's response to Rauner's May 2022 petition for final administration of the estate, he asserted in paragraph 9 that Rauner had "committed fraud, misrepresentation or inadequate disclosure and distribution information at the February 13, 2014 hearing and his filings for that hearing." In the county court's order, it found that such assertion by Filsinger was frivolous, as it had already been asserted by Filsinger and the other heirs, fully litigated, and denied. As a result of the frivolous assertion, the court ordered Filsinger to pay attorney fees to the estate in the amount of $500. The court instructed that "[p]ayment of that attorney's fees is to [be] withheld by [Rauner] from Mr. Filsinger['s] share of the residuary estate, and paid directly to O'Donnell, or as he shall direct."

On appeal, Filsinger challenges the county court's order requiring him to pay attorney fees to O'Donnell in the amount of $500. He asserts that none of the claims asserted in his response to Rauner's May 2022 petition for final administration of the estate were frivolous. Upon our review, we affirm the order of the county court finding a portion of Filsinger's response to be frivolous and ordering him to pay $500 in sanctions.

Neb. Rev. Stat. § 25-824(2) (Reissue 2016) provides, in relevant part:

[I]n any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

For purposes of § 25-824, "frivolous" means an attempt to relitigate the same issues resolved in prior proceedings with the same parties or a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position. *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. 1013, 614 N.W.2d 273 (2000).

In *Filsinger I*, we addressed Filsinger's and the other heirs' claim that Rauner committed inadequate disclosure, fraud, or misrepresentation in his handling of the estate during the early part of 2014 when he attempted to wrap up the estate proceedings. After a full review of the evidence, we concluded that there was no fraud, misrepresentation, or inadequate disclosure perpetrated by Rauner. Our reading of Filsinger's response to Rauner's May 2022 petition for final administration of the estate reveals that he asserted this issue again, verbatim. Because this issue had been previously litigated and decided, we agree with the county court that it is a frivolous claim. Given the frivolous nature of this claim, we can find no abuse of discretion by the county court in ordering Filsinger to pay $500 in attorney fees as a sanction for his conduct.

## VI. CONCLUSION

For the reasons set forth herein, with the exception of the court's order awarding attorney fees to O'Donnell, we affirm the order of the county court as modified. The attorney fees awarded to Mattoon are reduced by a total of $2,698.25 resulting in a total fee award to Mattoon in the amount of $10,801.75. Because the award of fees to O'Donnell was not supported by competent evidence, we vacate that portion of the county court's order and remand the matter to the county court with directions to hold a further evidentiary hearing. The remainder of the county court's order awarding fees and sanctions in Orville's estate is affirmed.

AFFIRMED IN PART AS MODIFIED, AND IN PART
VACATED AND REMANDED WITH DIRECTIONS.